**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DEBORAH A. JOHNSON               *
                                 *
          v.                     *      Civil Action WMN-08-CV-3162
                                 *
BALTIMORE COUNTY, MARYLAND       *

     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM**

Before the Court is Defendant Baltimore County, Maryland's Motion for Summary Judgment. Paper No. 24. The Motion is fully briefed. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6), and the motion will be granted as set forth below.

**I.    BACKGROUND**

On February 11, 2006, Plaintiff's husband confronted her about an alleged extra-marital affair with a colleague. An argument ensued and Plaintiff's husband called 911 to report that she was tearing up the house and that he wanted to avoid the argument from escalating. At some point following that call, Plaintiff went upstairs, retrieved her husband's handgun, put it in the pocket of her sweatshirt, and returned downstairs. Although the evidence indicates that Plaintiff never removed the gun from her pocket, her husband saw the gun and again called 911. During that call, he told the 911 operator he needed someone to come before it became violent and that he was trying

to avoid a murder from taking place.  When the police arrived, after initially misdirecting them as to the gun's location, Plaintiff directed them to the correct location under her daughter's mattress, where she had placed the gun prior to their arrival.  On March 10, 2006, the case went to trial, but her husband invoked the spousal privilege and refused to testify. Plaintiff received verdicts of <u>nolle</u> <u>prossequi</u> on two counts and not guilty on a third.

At the time of the incident, Plaintiff was a Lieutenant with the Baltimore County Department of Corrections.  Following the incident with her husband, Plaintiff was suspended indefinitely pending the outcome of her criminal trial.  During her suspension, Internal Affairs conducted an investigation during which Plaintiff stated to the investigator that "she just wanted to get her husband's attention and to let him know how serious she was and that they needed to talk about the situation."  Report of Investigation at C-58.  After the disposition of the criminal matters, Plaintiff was demoted from the rank of Lieutenant to the rank of Sergeant.  At her disciplinary hearing, Deputy Director Deborah J. Richardson concluded that, although the incident was egregious enough to warrant termination, given her 19 years of service and minimum disciplinary actions, she would receive a demotion.  Deputy Director Richardson stated that "[a]s a public safety employee

charged with responsibility to uphold the law and supervise individuals who are convicted of violating the law, your conduct . . . questions your ability to make reasonable and rational decisions in stressful situations." Administrative Hearing Summary 2. Deputy Director Richardson found that Plaintiff violated Baltimore County Code Title 8 Section 4-8-101-15.04(n), "guilty of conduct such as to bring the county classified service into disrepute;" and 15.04(0-12), "guilty of conduct which does not affirm that the public office is a public trust." Id. at 1. Plaintiff appealed the decision. During the appeals hearing, Plaintiff testified that "since she works as a supervisor, she knew she would be indefinitely suspended for being arrested and charged with a felony. She accepted the suspension and did not appeal. She testified her action of pulling out a gun and threatening her husband is a serious matter." Grievance Appeal Decision 5. The Board upheld Plaintiff's demotion. Plaintiff now brings this action for racially disparate discipline under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue of material fact and that the moving

3

party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A

party seeking summary judgment bears the initial responsibility

of informing the court of the basis of its motion and

identifying the portions of the opposing party's case that it

believes demonstrate the absence of a genuine issue of material

fact.  <u>Id.</u> at 323.  The non-moving party is entitled to have

"all reasonable inferences . . . drawn in its respective favor."

<u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1129 (4th Cir.

1987).

If the movant demonstrates that there is no genuine issue

of material fact and that the movant is entitled to summary

judgment as a matter of law, the non-moving party must, in order

to withstand the motion for summary judgment, produce sufficient

evidence in the form of depositions, affidavits, or other

documentation which demonstrates that a triable issue of fact

exists for trial.  <u>Celotex</u>, 477 U.S. at 324.  Unsupported

speculation is insufficient to defeat a motion for summary

judgment.  <u>Felty</u>, 818 F.2d at 1128 (citing <u>Ash v. United Parcel

Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986)).

Furthermore, the mere existence of some factual dispute is

insufficient to defeat a motion for summary judgment; there must

be a genuine issue of material fact.  <u>Anderson v. Liberty Lobby,

Inc.</u>, 477 U.S. 242, 247-48 (1986).  Thus, only disputes over

those facts that might affect the outcome of the case under the governing law are considered to be "material." Id.

## III. DISCUSSION

Title VII declares it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). Because Plaintiff has not put forth direct evidence of discrimination, her Title VII claim is analyzed under the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Moore v. City of Charlotte, NC, 754 F.2d 1100, 1105-1106 (4th Cir. 1985).

Under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of discriminatory discipline under Title VII. Id. To establish a prima facie case of discriminatory discipline under Title VII, Plaintiff must demonstrate 1) that she is a part of a Title VII protected class; 2) her prohibited conduct was comparably serious to misconduct by employees outside the protective class; and 3) the disciplinary measures taken against her were more harsh than those enforced against other employees. Id.

Here, it is uncontested that Plaintiff, an African American, meets the first element. Defendant argues, however, that Plaintiff cannot establish the second two elements because

no other Correctional Lieutenant has "threatened" another person with a gun. Plaintiff responds that, to show disparate treatment, the other employees do not need to have committed the exact same offenses as long as their acts were of comparable seriousness. Moreover, she argues that the comparable employees do not need to have the same job titles, but only that they are subjected to the same employment policies. She then references several Caucasian employees, who, she alleges, committed offenses as serious as hers, but were not treated as harshly as she was. She also notes that Major Charles Ittner, who recommended termination in her case but was not the official who imposed her discipline, is the official who recommends discipline at the Detention Center and that he "continues to impose more lenient disciplinary treatment on Caucasian employees." Pl. Opp. 7.

To establish the second element, Plaintiff "must provide evidence of prior employee incidents that were sufficiently similar 'in light of the harm caused or threatened to the victim or society, and the culpability of the offender.'" Forrest v. Transit Management of Charlotte, Inc., 245 Fed. Appx. 255, 256 (4th Cir. 2007) (quoting Moore, 754 F.2d at 1107). Four of the employees referenced by Plaintiff are correctional officers and not supervisory as is Plaintiff. "The similarity between comparators . . . must be clearly established in order to be

meaningful." Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008). As Plaintiff was a Lieutenant, the Court cannot compare the standards of performance expected of her versus standards expected of mere correctional officers. See Forrest, 245 Fed. Appx. at 257 ("[W]hile Forrest did attempt to present testimony regarding an altercation between two non-supervisory employees, these individuals were not subject to the higher standard of performance that was applicable to Forrest as a supervisor."). Thus, the Court finds that these comparators are not similarly situated employees for purposes of demonstrating disparate discipline.

Of the remaining comparators, one was a corporal who was convicted of driving while under the influence and received nolle prosequi on several other driving offenses. Another corporal violated administrative procedures resulting in the escape of an inmate. These two received suspensions of three and ten days respectively. The Court finds that these actions may involve irresponsibility, bad judgment, and negligence, but they are far from similar to Plaintiff's action, taken in anger, that could be construed as threatening another person's life with a gun. The third comparator, a sergeant, was found to have slept while on duty, improperly dealt with contraband in the facility, and made inappropriate comments to fellow officers and disrespected a supervisor. He was ultimately demoted to

corporal for use of abusive language toward a female co-employee.  Here again, using inappropriate language and violating administrative rules is simply not comparable to threatening a person with a weapon.  Moreover, Plaintiff herself had previous violations and, if anything, the third comparator's ultimate discipline of demotion supports the premise that she was not disparately disciplined.

Because Plaintiff has not demonstrated that her prohibited conduct was comparably serious to misconduct by employees outside the protective class, Plaintiff has not met her burden of showing a prima facie case of disparate discipline.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

June 16, 2010